## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RLS LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 18-125 |
| | ) |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| CONEX UNIVERSAL LIMITED, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff RLS LLC ("RLS") files this complaint against Defendant Conex Universal Limited ("Conex") to stop Conex's willful infringement of U.S. Patent Nos. 9,145,992 (the "'992 patent") and 9,638,361 (the "'361 patent").  RLS, by its undersigned attorneys, alleges, with knowledge as to its own acts and on information and belief as to other matters, as follows:

### THE PARTIES

1.      RLS is a limited liability company organized under the laws of the State of Delaware and has a principal place of business at 101 South Douglas Street, Shelbina, Missouri 63468.

2.      RLS is a subsidiary of Marmon Holdings, Inc., a Berkshire Hathaway company.

3.      On information and belief, Conex is a corporation organized under the laws of the United Kingdom and has a principal place of business at Global House, 95 Vantage Point, The Pensett Estate, Kingswinford, West Midlands, DY6 7FT, United Kingdom.

4.      On information and belief, Conex is a part of the IBP Group and conducts business under the brand name Conex Bänninger.

1

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Conex because, *inter alia,* Conex has purposefully and intentionally availed itself of the privileges of doing business in Illinois.  Among other things (i) Conex committed the tortious acts of using, offering to sell, selling, and/or importing infringing products to customers and/or potential customers within Illinois, (ii) Conex's tortious acts giving rise to this lawsuit and harm to RLS have occurred and are occurring within Illinois, (iii) Conex acted with knowledge that using, offering to sell, selling, and/or importing infringing products would cause harm to RLS within Illinois, (iv) Conex's customers and/or potential customers reside within Illinois, and/or (v) on information and belief, Conex is transacting business and benefiting financially from the Illinois market, including, for example, through sales of infringing products that occur within Illinois.  Alternatively, this Court may exercise personal jurisdiction over Conex, residing outside of the United States, under Federal Rule of Civil Procedure 4(k)(2).  The Court's exercise of personal jurisdiction over Conex in this action is consistent with the United States Constitution for at least the same reasons stated above.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because Conex is not resident in the United States.

## FACTUAL BACKGROUND

8.      RLS designs, develops, and manufactures RLS Press Fittings.  RLS Press Fittings are the world's first press-to-connect fittings engineered for high-pressure connections in the air-conditioning and refrigeration industries.  Illustration 1 shows an RLS Press Fitting.  Illustration 2

shows an RLS Press Fitting connecting two copper tubes.  A technician uses a crimping tool to crimp or compress the RLS Press Fitting onto the tube ends to create a connection.

| Illustration 1.  Example RLS Press Fitting |
|:---:|



| Illustration 2.  Example RLS Press Fitting Connecting Copper Tubes |
|:---:|

  

9.      Copper, aluminum, and other malleable tubes are commonly used in high-pressure air-conditioning and refrigeration systems.  Before RLS invented its Press Fittings, technicians used conventional soldering or brazing techniques to join tubes together.

10.      Brazing, however, has many disadvantages.  For example, brazing typically involves the use of a torch, which creates a fire risk.  This can be especially problematic, or even prohibited, in buildings open to the public.  Additionally, brazing aluminum is difficult and generally considered not practical for joining refrigeration and HVAC lines.  Moreover, heat from brazing often causes oxidation on the inside surfaces of the tubes.

11.     Crimp fittings were also used to join tube ends together as an alternative to brazing in low-pressure applications, such as plumbing systems.  However, the crimp fittings known before RLS invented its Press Fittings did not work in high-pressure applications because they would leak and deform, and thus could not be used in air-conditioning and refrigeration systems.

12.     Against that backdrop, and through years of research and development, RLS invented the RLS Press Fittings, which are the world's first press-to-connect fittings engineered for high-pressure connections.

13.     RLS's research and development took place, at least in part, in this District in East St. Louis, Illinois.

14.     RLS Press Fittings replace the highly skilled and time-consuming practice of manually brazing joints, which saves time, reduces total installation costs, improves consistency, and increases safety by eliminating the need for an open flame.

15.     RLS introduced the RLS Press Fittings in 2015.

16.     The RLS Press Fittings almost immediately revolutionized the air-conditioning and refrigeration industries, achieving significant commercial success and receiving industry praise. For example, RLS Press Fittings won the 2016 AHR Expo Innovation Award that honors the most inventive and original products, systems, and technologies showcased at the annual International Air-Conditioning, Heating, Refrigerating Exposition (AHR Expo).

17.     Recognizing the importance and ground-breaking nature of its innovations, RLS took steps to protect its rights, including by filing patent applications directed to its inventions.  To that end, RLS owns all right, title, and interest in and to the '992 patent and the '361 patent, both of which are directed to RLS's crimp fitting innovations.

18.     The U.S. Patent Office duly and legally issued the '922 patent on September 29,

2015.  A true and correct copy of the '992 patent is attached as Complaint Exhibit A.

19.     The U.S. Patent Office duly and legally issued the '361 patent on May 2, 2017.  A true and correct copy of the '361 patent is attached as Complaint Exhibit B.

20.     RLS gives the public, including Conex, notice that the RLS Press Fittings are patented by marking the products pursuant to 35 U.S.C § 287(a), including by virtually marking the products at http://www.rlspressfittings.com/patents/.  Illustration 3 below is a screen clipping of RLS's virtual marking page at http://www.rlspressfittings.com/patents/.

| Illustration 3.  RLS's Virtual Marking Webpage |
| --- |



21.     The success of the RLS Press Fittings has led others to copy RLS's innovations and attempt to capitalize on RLS's research and development breakthroughs.  For example, Conex

introduced a crimp fitting for high-pressure applications at the Chillventa International Exhibition in Nuremberg, Germany on October 11-13, 2016. Conex called its fitting the >B< MaxiPro fitting.

22.     RLS attended the October 2016 Chillventa International Exhibition and notified Conex that its >B< MaxiPro fittings violate RLS's patent rights in Europe and around the world.

23.     Conex, nonetheless, continued to promote its >B< MaxiPro fittings. For example, Conex promoted its >B< MaxiPro fittings at the 2017 AHR Expo in Las Vegas, Nevada on January 30 - February 1, 2017.

24.     RLS attended the 2017 AHR Expo and again notified Conex of RLS's patent rights, including at least the '992 patent.

25.     On March 17, 2017, RLS sent a follow-up letter to Conex, reiterating the same and requesting that Conex respect and avoid RLS's patented technology. A true and correct copy of the letter is attached as Complaint Exhibit C.

26.     Conex did not respond to RLS's letter of March 17, 2017.

27.     On information and belief, Conex pulled its >B< MaxiPro fittings from distribution shortly after the 2017 AHR Expo because the fittings were leaking.

28.     Later in 2017, Conex introduced a second generation >B< MaxiPro fitting.

29.     Conex introduced the second generation >B< MaxiPro fittings in late 2017 in the European and Australian markets.

30.     More recently, Conex introduced the second generation >B< MaxiPro fittings in the United States.

31.     At the 2018 AHR Expo in Chicago on January 22, 2018, Conex used, promoted and offered to sell its >B< MaxiPro fittings. Illustration 4 below shows examples of the >B< MaxiPro fittings. Illustration 5 shows a >B< MaxiPro fitting connecting copper tubes.

**Illustration 4.  Conex >B< MaxiPro Fittings**



**Illustration 5.  Conex >B< MaxiPro Fittings Connecting Copper Tubes**

  

32.     Conex promotes its >B< MaxiPro fittings as a flame-free, press fitting solution that "is set to revolutionize pipe jointing in air conditioning and refrigeration applications."

33.     Conex also promotes its >B< MaxiPro fittings as an "innovative press system for air-conditioning and refrigeration applications."

34.     Conex has manufactured plumbing fittings and valves for more than one-hundred years.  Conex has also manufactured crimp fittings for low-pressure plumbing applications for over twenty years.  Despite a century of experience with fittings, Conex never sold a crimp fitting for high-pressure applications until after RLS invented, patented, and launched the RLS Press Fittings.

35.     Conex has used, offered to sell, sold, and/or imported into the United States its >B< MaxiPro fittings, including at least at the AHR Expo in Chicago, Illinois.  Illustration 6 below

reproduces a Conex advertisement for the 2018 AHR Expo.  Illustration 7 below is a photo of Conex's booth at the 2018 AHR Expo.

**Illustration 6.  Conex Advertisement for the 2018 AHR Expo**



| Illustration 7.  Conex Booth at the 2018 AHR Expo |
| :---: |



36.     Conex markets, promotes, advertises, and offers to sell its >B< MaxiPro fittings on its website at http://www.conexbanninger.com/US/home.php, which is directed to and accessible in this District and across the United States.

37.     On its website, Conex also provides, among other things, a Sales Flyer, a Technical Brochure, and an Installation Guide for its >B< MaxiPro fittings.  True and correct copies of those documents are attached as Complaint Exhibits D-F, respectively.

**COUNT I:**
**PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(a) OF THE '992 PATENT**

38.     RLS incorporates by reference the allegations in Paragraphs 1 through 3636 above.

39.     Conex makes, uses, offers to sell, sells, and/or imports into the United States its infringing >B< MaxiPro fittings without the consent or authorization of RLS.

40.     Conex directly infringes at least claims 1-10 of the '992 patent by using, offering to sell, selling, and/or importing the >B< MaxiPro fittings in the United States.

41.     The >B< MaxiPro fitting satisfies every limitation of claim 1 of the '992 patent. The table below provides a non-limiting explanation of how the >B< MaxiPro fitting corresponds to each limitation of claim 1.  The table is exemplary only.  It does not limit the claims of the '992 patent.  The images of the >B< MaxiPro fitting in the table below are from Conex's Technical Brochure attached as Complaint Exhibit D.

| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
| --- | --- |
| A crimp fitting comprising a metal tube wall that forms both a cylindrical tube portion and an adjacent annular O-ring channel portion, |  |

| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| the tube wall having a first wall thickness along the cylindrical tube portion and a second wall thickness along at least part of the O-ring channel portion, the second wall thickness being less than the first wall thickness, | |
| the cylindrical tube portion and O-ring channel being configured and adapted to encircle a cylindrical end portion of a tube when such end portion of the tube is inserted into the fitting, | |
| the tube wall also forming a flared portion, | |



| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| the cylindrical tube portion being between the O-ring channel portion and the flared portion, |  |
| the flared portion having interior and exterior surfaces that diverge radially outward relative to the cylindrical tube portion as the flared portion extends away from the cylindrical tube portion, | |

| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| the exterior of the tube wall protruding radially outward at the O-ring channel portion relative to the adjacent cylindrical tube portion, |  |
| the flared portion and the O-ring channel portion of the tube wall forming an exterior locating cradle therebetween that is configured to constrain a crimping tool at the cylindrical tube portion of the fitting. | |

| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| |  |

42. Conex directly infringes claim 2 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting comprises copper.

43. Conex directly infringes claim 3 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting is annealed to a grain size in the range of 0.005 to 0.070 millimeters.

44. Conex directly infringes claim 4 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting is annealed to a grain size in the range of 0.015 to 0.035 millimeters.

45. Conex directly infringes claim 5 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the second wall thickness of the >B< MaxiPro fitting is less than 82% of the first wall thickness.

46.     Conex directly infringes claim 6 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the >B< MaxiPro fitting comprises an elastic O-ring that is engaged with and encircled by the O-ring channel portion of the tube wall.

47.     Conex directly infringes claim 7 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the >B< MaxiPro fitting comprises a molded gasket formed in the O-ring channel portion of the tube wall.

48.     Conex directly infringes claim 8 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting forms an insertion stop that protrudes radially inward relative to the cylindrical tube portion, and the O-ring channel portion of the tube wall is between the insertion stop and the cylindrical tube portion.

49.     Conex directly infringes claim 9 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting is formed out of copper and is annealed to a grain size in the range of 0.005 to 0.070 millimeters, the second wall thickness is less than 82% of the first wall thickness, the tube wall further forms an insertion stop that protrudes radially inward relative to the cylindrical tube portion, and the O-ring channel portion of the tube wall is between the insertion stop and the cylindrical tube portion.

50.     Conex directly infringes claim 10 of the '992 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the cylindrical tube portion and the O-ring channel portion are formed on a first axial half of the fitting

and the fitting comprises a second axial half formed by the tube wall that is a mirror image of the first axial half.

51.      Conex's infringements have been willful, intentional, and deliberate.  Conex knew or should have known that using, offering to sell, selling, and/or importing the >B< MaxiPro fittings in the United States would directly infringe claims of the '992 patent, yet Conex infringed and, on information and belief, continues to infringe claims of the '992 patent.

52.      RLS has suffered, and continues to suffer, irreparable harm and damages as a result of Conex's infringements of the '992 patent.

53.      RLS has no adequate remedy at law for Conex's infringements of the '992 patent.

54.      On information and belief, Conex's infringements of the '992 patent will continue unless enjoined by this Court.

## COUNT II
## PATENT INFRINGEMENT UNDER 35 U.S.C. § 271(a) OF THE '361 PATENT

55.      RLS incorporates by reference the allegations in Paragraphs 1 through 36 above.

56.      Conex makes, uses, offers to sell, sells, and/or imports into the United States its infringing >B< MaxiPro fittings without the consent or authorization of RLS.

57.      Conex directly infringes at least claims 1-10 of the '361 patent by using, offering to sell, selling, and/or importing the >B< MaxiPro fittings in the United States.

58.      The >B< MaxiPro fitting satisfies every limitation of claim 1 of the '361 patent. The table below provides a non-limiting explanation of how the >B< MaxiPro fitting corresponds to each limitation of claim 1.  The table is exemplary only.  It does not limit the claims of the '361 patent.  The images of the >B< MaxiPro fitting in the table below are from Conex's Technical Brochure attached as Complaint Exhibit D.

| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| A crimp fitting comprising a metal tube wall that forms both a cylindrical tube portion and an adjacent annular O-ring channel portion, |  |
| the tube wall having a first wall thickness along the cylindrical tube portion and a second wall thickness along at least part of the O-ring channel portion, the second wall thickness being less than the first wall thickness, |  |

| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| the cylindrical tube portion and O-ring channel being configured and adapted to encircle a cylindrical end portion of a tube when such end portion of the tube is inserted into the fitting, | |
| the tube wall also forming an annular positioning protrusion, | |
| the cylindrical tube portion being between the O-ring channel portion and the annular positioning protrusion, | |



| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| the annular positioning protrusion having an exterior surface that protrudes radially outward relative to the cylindrical tube portion, | |
| the exterior of the tube wall protruding radially outward at the O-ring channel portion relative to the adjacent cylindrical tube portion, | |



| Claim 1 of the '992 Patent | Conex's >B< MaxiPro |
|---|---|
| the annular positioning protrusion and the O-ring channel portion of the tube wall forming an exterior locating cradle therebetween that is configured to constrain a crimping tool at the cylindrical tube portion of the fitting. |  |

59.     Conex directly infringes claim 2 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting comprises copper.

60.     Conex directly infringes claim 3 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting is annealed to a grain size in the range of 0.005 to 0.070 millimeters.

61.     Conex directly infringes claim 4 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting is annealed to a grain size in the range of 0.015 to 0.035 millimeters.

62.     Conex directly infringes claim 5 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the second wall thickness of the >B< MaxiPro fitting is less than 82% of the first wall thickness.

63.     Conex directly infringes claim 6 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the >B< MaxiPro fitting comprises an elastic O-ring that is engaged with and encircled by the O-ring channel portion of the tube wall.

64.     Conex directly infringes claim 7 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the >B< MaxiPro fitting comprises a molded gasket formed in the O-ring channel portion of the tube wall.

65.     Conex directly infringes claim 8 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube

wall of the >B< MaxiPro fitting forms an insertion stop that protrudes radially inward relative to the cylindrical tube portion, and the O-ring channel portion of the tube wall is between the insertion stop and the cylindrical tube portion.

66.     Conex directly infringes claim 9 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the tube wall of the >B< MaxiPro fitting is formed out of copper and is annealed to a grain size in the range of 0.005 to 0.070 millimeters, the second wall thickness is less than 82% of the first wall thickness, the tube wall further forms an insertion stop that protrudes radially inward relative to the cylindrical tube portion, and the O-ring channel portion of the tube wall is between the insertion stop and the cylindrical tube portion.

67.     Conex directly infringes claim 10 of the '361 patent because the >B< MaxiPro fitting satisfies every limitation of claim 1 as illustrated in the chart above and further because the cylindrical tube portion and the O-ring channel portion are formed on a first axial half of the fitting and the fitting comprises a second axial half formed by the tube wall that is a mirror image of the first axial half.

68.     Conex's infringements have been willful, intentional, and deliberate.  Conex knew or should have known that using, offering to sell, selling, and/or importing the >B< MaxiPro fittings in the United States would directly infringe claims of the '361 patent, yet Conex infringed and, on information and belief, continues to infringe claims of the '361 patent.

69.     RLS has suffered, and continues to suffer, irreparable harm and damages as a result of Conex's infringements of the '361 patent.

70.     RLS has no adequate remedy at law for Conex's infringements of the '361 patent.

71.    On information and belief, Conex's infringements of the '361 patent will continue unless enjoined by this Court.

## JURY DEMAND

72.    Pursuant to Federal Rule of Civil Procedure 38(b), RLS hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, RLS respectfully prays for:

A.    Judgment that Conex has infringed the '992 patent and the '361 patent by making, using, offering to sell, selling, and/or importing the >B< MaxiPro fittings in the United States;

B.    A permanent injunction enjoining Conex and their affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Conex, from infringing the '992 patent and the '361 patent;

C.    An award of damages adequate to compensate RLS for Conex's infringements of the '992 patent and the '361 patent, together with prejudgment and post-judgment interest and costs;

D.    An award of enhanced damages pursuant to 35 U.S.C. § 284 for Conex's willful infringements;

E.    A declaration that this case is exceptional under 35 U.S.C. § 285, and that RLS be awarded reasonable attorneys' fees and costs; and

F.    Such other and further relief as this Court deems just and proper.

Dated: January 22, 2017

Respectfully submitted,

/s/ Michael J. Harris
Christopher J. Renk
Erik S. Maurer
Michael J. Harris
Kevin Dam
Banner & Witcoff, Ltd.
10 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone:  (312) 463-5000
Facsimile:  (312) 463-5001
crenk@bannerwitcoff.com
emaurer@bannerwitcoff.com
mharris@bannerwitcoff.com
kdam@bannerwitcoff.com

*Attorneys for Plaintiff, RLS LLC*